The first case today is 14-1296, Alexander Cuevas v. United States. Ms. Thompson. Good morning, Chief Judge Lynch, Judge Thompson, and Judge Barron. My name is Linda Thompson. I'm arguing for Mr. Cuevas. My partner, John Thompson, is accompanying me. Before I start, I would like to request two minutes rebuttal with the court's permission. Thank you very much, Judge. Mr. Cuevas was convicted of several federal drug charges, and he was then sentenced by Judge Stearns according to what at that time was a criminal history category for and a base offense level of 24. At sentencing, there was quite a bit of contest over what the base offense level should be, but there was no contest over what the criminal history category was. So at that time, the criminal history category included two state court convictions for heroin-related offenses, one from 2006 and one from 2007. As the case went up on appeal, one of the things that started happening in Massachusetts was that Annie Dukin's treatment of drugs in the Hinton Lab came to light, and the Supreme Judicial Court in Massachusetts, as well as all of the trial courts, began to grapple with the difficulties that were raised by Ms. Dukin's antics at the lab. The court declared after Mr. Cuevas had been sentenced that where Ms. Dukin was either the primary or the confirmatory chemist, any cases that she dealt with were questionable for egregious government misconduct, and Mr. Cuevas moved in the district court to set aside his two convictions as Ms. Dukin was involved in both of those. Neither of those convictions was the result of a guilty plea. They were the result of Ms. Dukin's certificates being admitted as the factual basis for determining what the substance was. Once those convictions were set aside, Mr. Cuevas moved promptly for resentencing under 2255. Now, the things that are not in contest here are the following. That 2255 was the appropriate vehicle for Mr. Cuevas to proceed by once his convictions had been vacated. That Custis and Johnson are the starting point for the remedial treatment of having those convictions having been set aside. That the filing of this 2255 was timely in the district court, that Mr. Cuevas was diligent in pursuing his remedies, and that there is no procedural default involved in this case. When his 2255 was denied, and the effect of the 2255 would have been to reduce his criminal history category from a Category 4 to a Category 3. And so those two enhancing convictions now having been set aside, his resulting advisory sentencing guideline would be 63 to 78 months, where his original sentencing guidelines had been 77 to 96 months. He had received a sentence of 84 months, pretty much in the middle of the sentencing guidelines. So under Johnson, it's fairly clear that he's entitled to come into court and seek resentencing once those two enhancing convictions have been set aside. The court in Johnson indicated that they felt that Congress did not appear to have adopted a policy to enhance federal sentences, regardless of the validity of the convictions relied on for enhancement. And so now Judge Stearns had two convictions that were relied on for enhancement that had been invalidated. According to the federal courts, no court has ever said you're not entitled to relief once you have your convictions set aside. When the case gets to the 2255 stage … Can I just stop you there? Is that true for any reason that it may be vacated? What about the district court cases that the government points to where the conviction is vacated and the state court vacates it specifically because they want to affect the federal sentencing determination? I think that is a merits argument that the government makes once the 2255 has … Judge Saylor's case, the Lopez case, in which he acknowledged the cases that the government relies on here, like Hawkins and Sun Bear, and says, oh, this is different because there was … In that case, the conviction was partially vacated, so that it reduced it from assault and battery on a police officer to assault and battery, thereby lowering the effect of that sentence on that criminal history category. You're a very experienced criminal lawyer. Yes. Let's think of this in terms of an institutional problem. In your case, you have the vacating of state convictions in the interest of justice, which is a bit different than the vacating of judgments in order to affect a federal sentence. One wants to think of habeas corpus relief as being plausible in certain situations, but perhaps not in all situations. The government has a legitimate concern here about opening the door, they'll call it the floodgates, to mandating reconsideration of federal sentences under certain situations. Most of the cases they rely on are not quite like this case. So if you're structuring this system, what are the limitations on the rule that you think make sense here, are viable? I know I'm asking you to go well beyond your client's own case, but your experience would be helpful to us. Thank you, Judge. First of all, I have had quite a bit of experience with Rule 30 in the Massachusetts courts, and I see that the Rule 30 orders that were granted in Mr. Cuevas' case had a factual basis. They were based on Annie Dukin's certificates. It has been my experience that it's difficult to get a new trial in the state court, but as I read the Johnson case, what I saw was what Johnson understood was that when the federal court opts to rely on state convictions, they also opt to rely on the state procedures for post-conviction relief, and those procedures may or may not let you get into court. So what I would think would be the appropriate way to proceed is exactly the way Judge Saylor proceeded in the Lopez case. That is, when the convictions have been set aside, and Judge Saylor also did this in the Vizcayano case in 2013. She said, you can bring your 2255 when your conviction is vacated, but if it turns out, when I look at it as a district court judge, that it did not affect your sentence. It did not enhance your sentence. You're not going to get relief. You will not get relief if your sentence was not enhanced. I understand that, but I guess that could be true in this case, too, that the sentence could be the same in the end, right? It could be the same. Yeah, but I'm asking a separate question, whether there's a cognizable 2255 every time a conviction is vacated. And what the government suggests, at least one concern is, that what will happen is you can go back to state court many years later, ask for the conviction to be vacated because you want to affect the federal sentence. If they vacate it, not because there was a manifest injustice or Andy Dukin tampered with the evidence, but just because the state court says, well, it's many years, what do we care? They vacate the conviction. Does that make it cognizable under 2255? I understand that's not your case, but like Chief Judge Lynch, I'm just trying to get a sense of, is that a distinction that's meaningful or is the only practical way to do this, that if a conviction is vacated, it's either cognizable or not, and then we just look at the merits. Once we assume it's cognizable, then we look at the merits to decide whether you're entitled to a different sentence or not. I think that Johnson does stand for that proposition, that once you've had your sentence vacated. Well, put aside Johnson, okay? Let's say I didn't agree. Well, no, in the sense that if one read Johnson to be more ambiguous than you're suggesting, I guess what I'm asking is, is it practicable to make a distinction between the basis for the state court's decision to vacate the conviction? How evident is it from the face of things? Here we know what the reason was. In many instances what we not know is the way the procedure worked in Massachusetts. You could vacate for no statement as to why it was vacated. Well, that has happened. But I will say that when I look at the way factually this has happened in Massachusetts in the federal district courts here, and one of the things that the Pettiford case indicates, that since 1989 when a domagon was decided by Judge Mazzoni, these courts have been applying this without any difficulty whatsoever. It hasn't opened the floodgates. It has, in fact, because these are particular to a defendant rather than to a class of cases, it's unlikely to open the floodgates. The distinction between a change of fact, which is what Johnson and Mr. Cuevas and Mateo rely on, and a change in law is fairly substantial, because a change in law only affects the significance of the potential significance of the conviction. Let me pursue this a bit further. We know very well that the many state courts have, because they don't like the federal sentencing guidelines, have vacated prior convictions. The DAs agree to the vacating. They don't have any skin in the game anymore. That's the situation that the government lawyers have pointed out to us, and we know it happens. You're suggesting once you've vacated a conviction, there is a cognizable 2255, and that thereafter it's up to the federal judge to look at the reason for the vacating, and if it is based on a fact, then you can go forward? Is that the suggestion? Because the other suggestion is, no, you cut it off earlier. If the state court has said, or it's pretty apparent, that it's done for the sole purpose of affecting the federal sentence, then it's not cognizable. I think that is actually a merits decision, and that's the position I would take on that. I don't think it's difficult. Could you just help me with that? I guess it's Hill, in our Kofsky case, citing Hill. When we try and describe that last prong of 2255 that we're dealing with, otherwise subject to collateral attack, you say this is from Hill. Although the language of 28 U.S.C. 2255 is quite general, the Supreme Court has restricted collateral attack for claims that do not allege constitutional or jurisdictional errors. Such claims are said to be cognizable only where the alleged error presents a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure. So I guess the question is, given that standard, I could see why a vacated conviction when there was a substantial concern about egregious governmental misconduct, as in the Dukin case and therefore your client's case, fits within that language. What's less clear to me is how that language would apply in a case where a conviction was vacated when it was a perfectly fair procedure, everything about it was fine, and the state court says eight years later, I don't really like how onerous the federal sentence is, so I'm happy to vacate the conviction. Well, I think if that's what came to the court, that is there was absolutely no reason given for vacating the conviction and it was years later, that you might take that into consideration on cognizability, but the fundamental defect language, and I'm now turning to the Spencer case which was brought to your attention after these briefs were filed. In Spencer, the court said that a prisoner may challenge a sentencing error as a fundamental defect on collateral review when he can prove either that he is actually innocent of the crime or that a conviction used to enhance his sentence has been vacated. So when an invalid conviction has been used to enhance a sentence, that's considered a fundamental defect that brings you within the reach of 2255. Thank you. Good morning, Your Honors, and may it please the court, Michael Rocker from the Department of Justice on behalf of the United States. Let me start by addressing some of the questions that the court was posing. In our view, the universe of claims that are cognizable is set forth in Section 2255A itself, and so 2255A defines when a claim is cognizable. In our view, the question of how to mesh this vacated conviction problem with cognizability thus flows from the statute. Now, as we've pointed out and as the Supreme Court has held in cases like The claim is automatically a cognizable claim for collateral relief because the sentence, in the words of 2255, is in excess of the maximum provided by law. It's the second prong of 2255A. Your Honor, the problem with Johnson is that the language upon which Mr. Cuevas is relying wasn't necessary to the decision. In Cuevas, I'm sorry, in Johnson, he received a career offender sentence under the mandatory guidelines. The prior convictions were vacated in the state court. He came back and filed a 2255. That's a third prong case, right? It exceeds the maximum. No, it did exceed the maximum because it was guidelines. No, no, no. In the case that you're willing to grant, it would be okay. Yes, the second prong. The second prong. Okay. Yes. So now, let me just give an example. You tell me, under your rule, how this plays out. The reason the conviction was vacated is because the state court concluded he was actually innocent. It just never happened. If it's a guidelines error, it's not cognizable. So your view is as long as we're guidelines, it doesn't matter why it was vacated. It's up to Congress to define the parameters, and we don't think it's within the scope of the statute. That's the bottom line claim. It's not a fundamental defect. That depends on a particular reading of Johnson, which is quite contrary to the way this circuit has read Johnson. What's wrong with reading Johnson as saying the vacating of a state court conviction, particularly one said to be in the interest of justice, fits within the classic definition of cases in which collateral attack is permitted. That is the way this circuit has viewed that. If Your Honor is referring to Mateo, I think that Mateo does provide support for that. The problem with Mateo's application here is that the prior conviction was vacated for constitutional error. Why would that matter? I'm not sure. But why would that matter? You tell me why that would matter. I don't know because I'm not sure that the legal rule that Mateo set forth. Well, you have to make some sense of it. No, I understand. If there's an underlying constitutional error, that wouldn't make the sentence unconstitutional. But they don't say that. They don't say that therefore it's a first-prong case. Correct. Okay, so it's not because the sentence is unconstitutional. So one quite plausible reading is there was such a fundamental defect in the underlying conviction. If that's true, then I would think a fundamental defect, which is the result of egregious governmental misconduct, would be the same. Well, it doesn't say that either with all due respect. It doesn't say that. It doesn't say what you said. No, it doesn't say that. But it is specifically tethered. We're bound by Mateo. Right. We're not free to say that a constitutionally vacated conviction on constitutional grounds is not cognizable. I agree with that. Okay, so then what would be some principal way of making sense of it? It's got to be that the idea is when a conviction is vacated for that kind of reason, it would be a miscarriage of justice within the meaning of Hill. Well, I don't know what the reasoning was of Mateo. I'll be completely candid. It's not clear. I think we agree that it's at least ambiguous. In our view, though, the Court didn't consider the arguments about what a fundamental miscarriage of justice means in cases like Spencer and Hawkins as to advisory guidelines. How could we limit Mateo just to the case of a constitutional basis for vacating a conviction? What principled way would there be to limit it just to that? Because that's what the facts of that case are. No, that's what happened. I'm saying what would be a principled way of saying only that and no further? Can you help me with that? The only principled argument I can think of, Your Honor, is that where the prior conviction is vacated itself for constitutional error, then the subsequent federal court reliance on that conviction taints the federal sentence to a constitutional level. That's the only way that I can understand the Mateo rule. Our position in this case, though, is that it's in the We should view Mateo as a prong one case? Yes, that's the difficulty. This doesn't make a lot of sense. It doesn't make sense to me either, but our point is that the Mateo rule isn't implicated, even if you accept that legal rule. Why doesn't the one I'm offering make some sense? Because, in our view, Mateo was a guidelines case just like this, and it didn't consider the arguments that have been adopted. First of all, it was mandatory guidelines, not advisory, which are at issue here. And second of all, it didn't consider the position that we have espoused in our brief and in other circuits about what does fundamental miscarriage of justice mean in the context of a guidelines error. And what the courts have generally adopted is that You're just challenging Mateo, which I totally understand you're free to do. No, I'm trying to distinguish it. But I'm asking for a distinction where we're bound by Mateo, and I could apply Mateo and distinguish it. And I'm trying to figure out what is your argument about how I could do that. I'm sorry for not being clear, Your Honor. The argument is that Mateo involved a guilty plea that was set aside as unknowing and involuntary, which is a quintessential core requirement of due process. Cuevas' convictions were the result of a jury trial. There was no guilty plea, and the records of the state court proceedings here do not establish that there was any finding of error, much less a finding of constitutional error. It was an interest of justice ruling by the state trial court. There was no finding of error, and none is required. Under Rule 30, you can make an interest of justice new trial order without finding error. And that, I think, distinguishes Mateo from the facts of this case. You tell me if this logic would make sense. So if there is a Sixth Amendment violation in a conviction, the convictions vacate on Sixth Amendment grounds, then you say under Mateo, we have to say it's cognizable. But if it is so crystal clear that the person never did the crime at all that the prosecuting attorney goes into the state court and says, I apologize, this man, he never should have been convicted, he's completely innocent, and the state court says it's so obvious that's true, I grant your motion, I vacate the conviction, because there's no finding of constitutional error, that's not cognizable. In the government's view, it's not. The court hasn't decided that question, and certainly the court would be free to extend the Mateo Rule. What we're saying is I understand that the court is fully bound. We haven't challenged Mateo, nor could the court deviate from it. What we're saying is that if you read Mateo, within the four corners of the opinion, there are at least two bases to distinguish it. Number one, it's mandatory guidelines, not advisory. Why would that matter? Just what's the argument as to why that should matter? In the government's view, it doesn't. In our view, it's a bright-line rule. No guidelines claims are cognizable at all under any circumstance because they're within statutory limits, and in our view, it's not a fundamental defect. Now, the Seventh Circuit has taken the view that a mandatory guidelines error is cognizable, but they then limited that holding and said, no, advisory guidelines present a different calculus on what's a miscarriage of justice because the guidelines are just one piece of advice. And effectively, when a guidelines error has taken place under the advisory guidelines, all we're really saying is, and you could say that about this case, the sentence is procedurally unreasonable. Well, that's the standard you apply on direct review. But on a collateral attack, you have to show more than just procedurally unreasonable to fit within a fundamental error. So our position, to be clear, is that no guidelines errors are cognizable, and the Seventh Circuit and the Eleventh Circuit both agree as to advisory. Okay? But if the court wanted to distinguish it, as the court alluded to in Damon, in fact, the court alluded, this court in Damon, to those Seventh Circuit cases that I referred to, Narvaez and Hawkins, that seemed to be a principle basis for limiting it. Whatever is good for mandatory isn't necessarily good for advisory. Why? That's what I'm trying to figure out. Because the guidelines are more flexible now than they were back then. You could argue, we don't agree with this, but you could argue that mandatory guidelines were more akin to a statute. They had greater force and effect of law. Now they're just advice. They've been demoted, if you will. And so they're the starting point. That's right. And that's why, again, if this were a direct appeal, Judge Thompson, we would probably be conceding that the sentence was procedurally unreasonable because the guidelines range was miscalculated. No, you wouldn't, because on directive appeals there would be no vacated conviction. But that's the point. But the finality interest under 2255 have to be different. There's no way he could have made this argument on directive appeals. That's right. And we haven't asserted a procedural bar. What I'm saying is, hypothetically, we would be willing to concede, for the sake of argument, that if this were a direct appeal and the convictions had been vacated at that point, the sentence would be procedurally unreasonable. But in Adonisio, the Supreme Court said, look, something that justifies relief on direct review doesn't necessarily give rise to a cognizable claim on collateral attack. This is not like a second form of direct appeal. It's an impossible scenario on direct appeal because it per se means that it was a vacating of a sentence post-sentencing. Well, it could be vacated before sentencing. He could challenge it before his federal sentencing, or he could get the conviction vacated after federal sentencing but before his direct appeal. I don't see it as being impossible. If it's vacated beforehand, then it's not likely that the district judge's sentence is not taken into consideration. No, but if it's vacated after sentencing and before the direct appeal. I think my larger point is not whether this is a realistic – I'm sorry. Yes, I think we know your larger point. You might want to think about offering us some limited guidance, some way of coming up with a narrower rule that does not accept your premise that no sentencing guideline error per se could ever be the basis for a 2255. I understand, Your Honor. What we would suggest in this case is to read the decision in Mateo, which I think would be driving the concern, which should be read narrowly. And the narrow reading can be justified, I think, in a principled fashion, at least for purposes of this case, based on the fact that it was a mandatory guidelines error and because there's been no showing whatsoever in the record. I'm asking you to look forward,  I understand. I'm not sure you do. If we do not accept your proposition that no guidelines error can ever fit within 2255, what are the limits that the government would propose? Your Honor, our litigating position – I mean, let me start by answering the question this way. You're losing an opportunity. I understand, Your Honor. One of the scenarios that was posed was do we look at the motivation, why the conviction was set aside. We don't accept that. We don't think that that's a proper basis to sort of get behind, well, are they doing it just to try to cut the federal sentence, or are they doing it because they have some – I don't think that's a workable principle. Why is that unworkable? Well, because I think, I mean, one of the questions that Chief Judge Lynch posed was it has to be the sole purpose. When you start getting into, well, what was the motivation at least in part or how much of it was motivated, just in practice that's getting very subjective and inside a defendant's head. Well, if we just went on the record that's before us as to the reason the state gave for vacating the conviction. Here they were actually fairly clear as to what they said they were doing, right, which we could just take at face value. Suppose they were silent. Ms. Thompson said there might be cases in which convictions vacated on the face of the order that the state court gives. They're just silent as to why they've done it. Do you have a proposition on how we're supposed to read that silence? Well, I think it's the petitioner's burden, first of all. I think he has to come forward and demonstrate that his claim was set aside on a basis that, again, I don't want to keep coming back to Mateo, but if you're going to try to fit it within Mateo, he has the burden to prove that it's a constitutional error. Now, his brief, for example, in this case, repeatedly says it's a due process error. There's no citation to the record to support that, and in our view the record doesn't. This is a situation where his motion to vacate was premised on a due process violation, but there was no hearing because the state conceded that it should be vacated. So we're setting up a situation where a defendant may have a perfectly valid due process claim, but it gets short-circuited by the government who concedes, and an order gets entered without any specific findings of a constitutional violation. Well, let me clarify two things. First of all, the order in one of the cases, and it was the Commonwealth, not the federal government, just to be clear, but in one of the cases the Commonwealth did concede. In the other case, though, the Commonwealth opposed, and the court granted the motion. And what the court said is, I find consistent with its authority under Rule 30 that in the interest of justice the conviction should be set aside. I agree with Your Honor. The motion was predicated on a due process denial of the right to fair trial, but that's not the basis the state court relied upon. And I think we have to, if we're going to take these orders, we have to take the order at face value for what it said. There's no, I don't disagree that the state court could have said, for the reasons given in the motion, I find there is a Sixth Amendment, a due process violation, and I grant the motion. That's not what the court said. And in interest of justice, new trial doesn't require, it's not contingent under the Massachusetts case law and rule on a finding of any error, much less constitutional error. You know, the two district court cases, the Lopez and, I don't know how to say it, Vincenziano. Yes, Vincenziano. I'll defer to you, Your Honor. Well, there's not much to defer to. So in those cases, what did the state court order vacating the conviction look like? When it's represented to us that what went on there was that there was a request to vacate it in order to effect a federal sentence. Is that evident from the face of what the state court did? I don't recall off the top of my head. I was focused on Mateo for purposes of this argument. I can certainly go back and check that. I'd be happy to submit something, but I don't recall off the top of my head. But I do know in Mateo, the court emphasized that there was a constitutional violation because the guilty plea was unknowing. The difficulty I'm having is a constitutional ground is separate. It's its own specific category under 2255. And by continuing to moor all categories of 2255 to the constitutional claim, you seem to be reading out Clause 4. No, with all due respect, we're not. We think Clause 4 does have some independent vitality for cases where there's been a complete miscarriage of justice. It's just that our position is- What would that look like? What is such a case? I'm sorry? What is such a case? Well, the Supreme Court has never found one, but what the court has suggested is that there may be violations of rules of criminal procedure that may be so sufficiently fundamental that it would qualify as a miscarriage. That's what Hill involved and the subsequent case in Timrek, which was Rule 11. Hill was Rule 32, allocution. The court has never found one, but they've also been very clear to reserve that question because the possibility may arise in the future. But- Actual innocence in your mind would not qualify, but a procedural rule would. Actual- I'm sorry, may I answer? Actual innocence of the prior conviction? Yes. If it was used, again, for- if the prior conviction had been used to enhance a sentence of the ACCA, it would qualify, but not for the guidelines. No, because at the end of the day, particularly on advisory guidelines, Your Honor, the ultimate sentence is within the limits set by statute for the crime. And it just- the way the Seventh and the Eleventh Circuits have analyzed it, the way we think it should be analyzed, is that fundamental miscarriage of justice should be tethered to whether the sentence is illegal or ultra-virus. And whatever one can say about a guidelines sentence, it's within the limits set by Congress. That's the way Adonisio, the Supreme Court's decision in Adonisio, tethered it to objective factors. They looked at the statutory maximum for the crime and they said, yeah, you got a longer sentence. That was a parole guidelines case. You got a longer sentence, perhaps because of a misunderstanding of how the It's not a constitutional error and it's not- it doesn't fit within the catch-all clause because it's not fundamentally unfair. And that's the way we think the issue should be analyzed. So actual innocence goes to why the conviction is vacated. But the question of cognizability, in our view, turns on what's the effect of the conviction. If it's used for ACCA purposes, we freely concede. But when it comes to the guidelines, we think a different rule applies. For many of the policy concerns that the court- this court has identified in Your Honor, correctly predicted, I'll use the word floodgates, but the concern about docket management and the incentive that will, frankly, be created to have defendants go back. I mean, as the court well knows- That incentive has been here for years. We've had this problem of the state court vacating state convictions for as long as I've been on this court. Yes, I know, Your Honor. I know the court is well familiar with it. And we think that, you know, a decision in this case that says on the advisory guidelines that you can challenge a one-level criminal history score increase under advisory guidelines is going to precipitate a large wave of litigation. And I would just emphasize, too, if I may, I realize my time is over, just two very brief points. Number one, in Damon, this court suggested that the magnitude of the guidelines error might be something to take into account. Okay? In this case, with no disrespect to Mr. Cuevas, the error in this case was relatively minor as compared to other guidelines provisions that have far greater impact. Look at 2L1.2, a 16-level increase, or career offender, much greater magnitude. If the court says that a one-level criminal history increase is enough, then magnitude is off the table because all guidelines errors that are based on prior convictions. And the second point, which is truly a bigger concern, I think, if you say that a one-level advisory guidelines error is enough to get into 2255, by definition, a fortiori, you have now opened the door to relitigation of mandatory guidelines errors. I mean, if a one-level criminal, if a one-level advisory, it works, it's a one-way ratchet. You can distinguish a mandatory holding doesn't necessarily apply to advisory. But if you say advisory is enough, you've, by definition, you've reached back to mandatory. Now, it's been 10 years since Booker, so many defendants, it may be too late for them to try, but rest assured, they're going to try. And the burdens that are going to be imposed by that litigation, when there's this new catalyst now, hey, look, you can go back and, you know, revitalize it even without a showing of constitutional error in the underlying conviction. But your position is, I thought, that that's already what the set, I thought other, that's already our law as you read it. Yes, but I read Mateo early. What I'm saying is. What I'm saying is that that incentive already has existed for a long time. We wouldn't be adding to that. It doesn't exist. Well, the magnitude of the Dukin problem, I think, is going to be a cottage industry in and of itself. Right? You're going to have a decision now saying a conviction on Dukin grounds is going to be enough. So, we just think that those concerns are legitimate. Actually, does the government know the number of state court convictions that have been vacated on Dukin grounds and how many of them affect federal sentences? I know at some point an effort was made to collect all of that data. I am not aware of that effort, but I'd be happy to look into that when I get back to Washington and I'd be happy to submit something if that would be helpful to the court. Actually, we'll take 28 J letters from both of you within less than what's today, Wednesday, by Monday of next week. We denied a bail motion here. There is some interest in moving this case promptly. I understand. Consult with the local office. But I do believe there are some statistics that it would be useful for us to know. I understand. Just to be clear, the letter should address, to the extent we can, the number of cases that are affected by the Dukin problem in state court? State court which have affected federal sentences. If you're predicting floodgate and there are statistics out there, we'd like to know what they are. Absolutely. Ms. Thompson says there's not going to be any flood, so we'll see. I'd be happy to submit something in writing. Thank you. Okay. The court has no further questions. I have far exceeded my time. Thank you, Your Honors. That's because we wanted answers to questions, and we appreciate the expertise of both you and Ms. Thompson on this difficult question. Thank you, Your Honors. Thank you. Ms. Thompson, you've reserved two minutes. Thank you. The basic distinction in the cases cited by the government is recognized by Judge Saris in Mateo, in which she states that when the debate is properly framed, those cases cited by the government now are inapposite, and they are inapposite for this reason. This is not a guidelines error. There was no error in the guideline, in the sentence. It was perfectly fine. This is a change in fact that brought Mr. Cuevas back into court. And what the court cited was the requirements of Sentencing Guideline 4A1.2 Note 6, where a court is not permitted to rely for enhancement on a conviction that has been expunged, set aside for either legal error or constitutional error. And that's specific in the Mateo First Circuit decision, and it takes Judge Saris's decision that this is just a misguided effort to say that a guidelines error at the original sentencing is procedural default. But is your position that what we're ruling for you would also have to extend to an expunged conviction? I think it's specifically. No, I know the guideline does, but does that make it cognizable under 2255? Because I thought the government suggested convictions can be expunged by a state court for all kinds of reasons that don't go to any miscarriage of justice in the actual procedure that led to the conviction. You have a case in which the argument, I thought, was that there was egregious governmental misconduct, which led in the interest of justice the decision to vacate the conviction. That's different, it sounds to me, than a situation where there's a youthful crime, and then ten years later they decide to expunge it so that various state law rights are restored to that individual. That particular law is clear that those that are expunged for a specific purpose like that do not form the basis of a 2255. What I'm saying is that the Mateo Court said that the guidelines make it clear that sentences for expunged convictions and the Note 6 convictions that have been vacated or set aside for errors of law or constitutional grounds cannot be counted. That's what makes the resentencing necessary is the factual change. The legal change that Hawkins, Sunbear, Spencer, and Whitesides all deal with are procedural default cases where the argument that you're making now has legal significance but your conviction has not been set aside. I just may take a minute to point out that in Spencer the court said, look, I understand your argument that your sex offense shouldn't be counted, but the fact of the matter is your conviction has not been vacated. And so you are not in court. You vacate that conviction, come back. Thank you.